IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| HASSAN MOHAMMADI, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-14-2197 |
| | * | |
| JOSEPH MICHAEL, *et al.*, | * | |
| Defendants. | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiffs Hassan Mohammadi ("Mohammadi") and Yasaman Rowhani ("Rowhani") (collectively, "Plaintiffs") bring this action against Defendants Joseph Michael ("Michael"), Cristina O'Brien ("O'Brien"), Colleen McKee ("McKee"), and David Finizie ("Finizie")[1], alleging violations of their constitutional rights under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents* , 403 U.S. 388 (1971).[2]

Currently pending before this Court are Defendant Michael's Motion to Dismiss (ECF No. 8) and Defendants O'Brien, McKee, and Finizie's Motion to Dismiss (ECF No. 15). The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2014).   For the reasons that follow, Defendant Michael's Motion to

---

[1] Collectively, O'Brien, McKee, and Finizie are the "Federal Defendants."

[2] In their Complaint, Plaintiffs also alleged violations of Maryland tort law and the Maryland Declaration of Rights, Md. Const. arts. XXIV, XXVI. Plaintiffs subsequently moved to dismiss these additional claims (Counts III-VII) without prejudice, leaving only the constitutional claims (Counts I and II). Consent Mot. to Amend/Correct Compl., ECF No. 18. This Court granted Plaintiffs' Motion on March 17, 2015 (ECF No. 21) and Plaintiffs then filed an Amended Complaint (ECF No. 22) reflecting this Court's Order. Plaintiffs cite to the Amended Complaint in their responses in opposition to the pending Motions (ECF Nos. 9, 19). Plaintiffs filed the Amended Complaint, however, several months after the completion of briefing on the pending Motions. This Court treats the pending motions to dismiss as applicable to the Amended Complaint.

Dismiss (ECF No. 8) is GRANTED WITH PREJUDICE and Defendants O'Brien, McKee, and Finizie's Motion to Dismiss (ECF No. 15) is GRANTED WITHOUT PREJUDICE.

BACKGROUND

This Court accepts as true the facts alleged in the plaintiff's complaint.  *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). The present action arises out of the investigation and subsequent imprisonment and criminal prosecution of Plaintiffs Hassan Mohammadi and Yasaman Rowhani for alleged theft. Plaintiffs are United States citizens of Iranian descent who were employed at the Hagerstown Hotel and Convention Center ("the Hotel") from November 2006 through August 2010. Compl. ¶¶ 12, 13, 20, ECF No. 1. Plaintiffs' employment at the Hotel began when Watchwood, LLC ("Watchwood") purchased the Hotel in November 2006. *Id.* ¶ 20. Bahman Rowhani ("Bahman"), Plaintiff Yasaman Rowhani's brother, was the sole shareholder of Watchwood. *Id.* Bahman hired Mohammadi and Rowhani as management-level employees of the Hotel. *Id.* At no time did the Plaintiffs possess an ownership interest in the Hotel. *Id.*

In 2008, the Hotel began to experience recession-related difficulties, forcing it to reduce its staff and neglect some of its financial obligations. *Id.* ¶¶ 27-28. The Hotel became unable to pay the premiums for its employees' insurance. *Id.* ¶ 28. From late 2008 until July 2009, the Hotel continued to withhold from employees' wages, but never made the necessary payments to the insurance company. *Id.* ¶ 33. During this period, Abbie Rhodes, the Hotel's comptroller, and Edward Lough, the insurance broker, allegedly engaged in a scheme to continue insurance coverage without payment. *Id.* ¶ 34. Plaintiffs claim that they did not learn of the insurance-related debts until June 2009. *Id.* ¶ 35. By that time, the Hotel

had accumulated such great debt that the insurance policy was cancelled for all employees on

of July 7, 2009, with the cancellation made retroactive to February 2009. *Id.* ¶¶ 37-38.

In July and August of 2009,[3] Mohammadi and Rowhani sought to repay the insurance

obligations and reinstate coverage for the Hotel's employees. *Id.* ¶ 42. The debt obligation

had grown to such a large amount, however, that the Hotel ultimately could never hope to

satisfy it. *Id.* After the cancellation, Patricia McDonnell ("McDonnell"), a Hotel employee,

filed a complaint with the U.S. Department of Labor regarding the lapsed insurance

coverage and arrears. *Id.* ¶ 45. The Department of Labor commenced a civil investigation,

led by Michael Piro ("Piro"), of the circumstances leading to the Hotel's insurance

cancellation. *Id.* ¶ 46. After reviewing McDonnell's complaint, Piro recommended that the

Department of Labor also initiate a criminal investigation.[4] *Id.* ¶¶ 46-47. Defendant McKee,

an investigator for the Department of Labor's Employee Benefit Services Administration,

began a criminal investigation on March 15, 2015.[5] *Id.* ¶ 47. She soon learned that

McDonnell had also filed a complaint with the Washington County Sheriff's Office in

September 2009. *Id.* ¶ 51. McKee thus wrote to Washington County Sheriff's Deputy

Michael Boras ("Boras") to coordinate their investigations of McDonnell's allegations. *Id.* ¶

52. Boras referred McKee to Defendant Michael, the Deputy State's Attorney for

Washington County, as Michael was already working on the matter. *Id.* ¶ 53. McKee then

spoke with Michael regarding the insurance allegations. *Id.*

---

[3] On August 10, 2009, Watchwood filed for bankruptcy under 11 U.S.C. § 1108. *Id.* ¶ 43.
[4] Plaintiffs allege that the Department of Labor chose to open a criminal investigation because the deadline for filing a claim in Watchwood's bankruptcy proceedings had already passed and a civil cased had been denied. *Id.* ¶ 47; *see also* Mem. in Supp. of Defs. McKee, O'Brien, and Finizie's Mot. to Dismiss, 3, ECF No. 15-1 (quoting Referral for Case Opening, ECF No. 15-2).
[5] Defendant O'Brien served as McKee's supervisor, and Defendant Finizie is the Regional Criminal Coordinator for the Employee Benefit Services Administration. *Id.* ¶¶ 15, 16.

Subsequently, McKee continued to pursue her investigation of the circumstances underlying the cancellation of the Hotel's insurance coverage. *Id.* ¶¶ 54-63. She interviewed witnesses from the insurance company (CareFirst), the insurance broker, and other relevant individuals. *Id.* ¶ 54. She also reviewed the insurance and payment records of the Hotel. *Id.* ¶¶ 54-58. On October 13, 2010, McKee prepared a status report of her investigation, in which she concluded that the Hotel withheld insurance-related sums from its employees, even though it knew that it was not paying the insurance premiums. *Id.* ¶ 59. McKee alleged that Plaintiffs and Bahman Rowhani were aware of the discrepancies. *Id.* ¶¶ 56, 60.

Defendants McKee and Finizie met with Defendant Michael on October 21, 2010 to discuss the case. *Id.* ¶ 64. Michael agreed to prosecute the criminal case, but refused to take part in any continuing investigation. *Id.* ¶ 65. McKee and Finizie agreed that the Department of Labor would carry the investigatory burden. *Id.* Thereafter, McKee resumed her investigation by interviewing Abbie Rhodes, the Hotel's former comptroller. *Id.* ¶ 66. Ms. Rhodes stated that all payments to the insurance carrier were at the direction of the Hotel's owner. *Id.* Plaintiffs claim that Ms. Rhodes's statement was false, as they explain that neither they nor Bahman Rowhani ever gave Ms. Rhodes such instructions. *Id.* McKee also interviewed other Hotel employees and reviewed the Hotel's payroll and other financial records.[6] *Id.* ¶ 80, 70. Throughout the investigation, McKee communicated with Michael to update him as to the progress of her scrutiny. *Id.* ¶¶ 77, 78.

On June 1, 2011, Michael obtained a grand jury indictment against Mohammadi and Rowhani for theft. *Id.* ¶ 84. As residents of Washington, D.C., Plaintiffs allege that they were

---

[6] Guests, Inc., the Hotel's receiver, granted McKee permission to review all relevant financial records. *Id.* ¶ 70.

unaware of any indictment against them, nor did any member of the investigation attempt to contact them to ask for their voluntary surrender. *Id.* ¶¶ 86, 87. Instead, Mohammadi and Rowhani were arrested on July 28, 2011, and held for five days at the District of Columbia Central Detention Facility. *Id.* ¶¶ 91, 93-95. Plaintiffs allege that they were informed of the charges while awaiting transfer to Washington County, Maryland. *Id.* ¶¶ 95, 96. Plaintiff Rowhani fell ill while in custody, and was transferred to a hospital. *Id.* ¶ 96. Plaintiffs were extradited to Washington County on August 2, 2011, and released on bond the following day. *Id.* ¶¶ 97, 103. The Employee Benefit Services Administration issued a press release concerning Plaintiffs' arrest and charges on August 4, 2011.[7] *Id.* ¶ 106.

From April 30 to May 3, 2012, Defendant Michael prosecuted the Mohammadi and Rowhani before a jury in the Circuit Court for Washington County, Maryland. *Id.* ¶ 112. Michael called many witnesses to testify, but Plaintiffs allege that none of the witnesses could connect Plaintiffs to the insurance payment scheme. *Id.* ¶¶ 113-115. Defendant McKee testified briefly regarding her investigation of the Hotel's insurance discrepancies. *Id.* ¶ 117. At the conclusion of the prosecution's case, the court dismissed the charges against Mohammadi and Rowhani via a motion for judgment of acquittal. *Id.* ¶ 122. The court explained that the State failed to prove that they possessed the requisite intent to commit theft. *Id.*

Plaintiffs subsequently filed the present action on July 8, 2014, alleging various constitutional and state law claims (ECF No. 1). Defendant Michael moved to dismiss the Complaint, asserting the defenses of absolute and qualified immunity, as well as sovereign

---

[7] Plaintiffs also include many examples of the press coverage of their arrest and the allegations against them. *See, e.g., id.* ¶¶ 104, 105.

immunity under the Eleventh Amendment (ECF No. 8). Defendants McKee, O'Brien, and Finizie then filed a separate Motion to Dismiss pursuant to Rules 12(b)(1)[8] and 12(b)(6) of the Federal Rules of Civil Procedure.[9]

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of

---

[8] Defendants McKee, O'Brien, and Finizie moved to dismiss only Count VI for lack of subject matter jurisdiction, arguing that Plaintiffs failed to exhaust administrative remedies under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* As Plaintiffs voluntarily dismissed Count VI, this argument regarding Rule 12(b)(1) is now moot.
[9] McKee, O'Brien, and Finize moved, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This Court is construing Defendants' Motion as a Motion to Dismiss, and thus need not consider Defendants' arguments for summary judgment.

action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. Although a "plaintiff need not plead the evidentiary standard for proving" her claim, she may no longer rely on the mere possibility that she could later establish her claim. *McCleary-Evans v. Maryland Department of Transportation, State Highway Administration*, __ F.3d __, 2015 WL 1088931, *11-12 (4th Cir. 2015) (emphasis omitted) (discussing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) in light of *Twombly* and *Iqbal*). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. While the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only *allege facts* sufficient to *state* elements of the claim." (emphasis in original) (internal quotation marks and citation omitted)). In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief.

*Iqbal*, 556 U.S. at 679. "At bottom, a plaintiff must nudge [its] claims across the line from conceivable to plausible to resist dismissal." *Wag More Dogs, LLC*, 680 F.3d at 365 (internal quotation marks omitted).

ANALYSIS

**I.      Defendant Michael's Motion to Dismiss (ECF No. 8)**

After voluntarily dismissing Counts III-VII, Plaintiffs allege only one remaining claim against Defendant Michael – that Michael, in prosecuting them for theft, violated their Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983. Compl. ¶¶ 129-133. In moving to dismiss this claim, Michael asserts three defenses.[10] First, Michael argues that any and all conduct related to Plaintiffs' incarceration and prosecution is protected by absolute prosecutorial immunity. Second, Michael contends that, even if he is not entitled to absolute immunity, his actions are shielded by the qualified immunity of officials performing discretionary functions. Finally, he maintains that the sovereign immunity of the Eleventh Amendment bars Plaintiffs' action. As Michael is entitled to absolute immunity for his prosecution of the Mohammadi and Rowhani, this Court need not reach the questions of qualified and sovereign immunity.

Section 1983 creates a private right of action for any United States citizen seeking to remedy alleged constitutional violations. 42 U.S.C. § 1983. Under Section 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation

---

[10] Generally, motions to dismiss pursuant to Rule 12(b)(6) address the legal sufficiency of a complaint rather than the existence of meritorious affirmative defenses; however, when the existence of such a meritorious defense— such as absolute immunity— is apparent on the face of the complaint, dismissal is appropriate. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). Thus, this Court will address Defendant Michael's asserted immunity defenses by examining the allegations contained in the Complaint.

of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Section 1983 does not create "substantive rights;" rather, it provides "a method for vindicating federal rights elsewhere conferred." *Thompson v. Dorsey*, Civ. A. No. ELH-10-1364, 2011 WL 2610704, at *3 (D. Md. June 30, 2011) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

Only a narrow range of officials receives the protection of absolute immunity. These officials, such as judges, legislators, and prosecutors, receive absolute immunity because they must be able to execute certain official duties without the constant fear of lawsuits. *See, e.g.*, *Nixon v. Fitzgerald*, 457 U.S. 731, 751-52 (1982) (discussing presidential immunity); *Stump v. Sparkman*, 435 U.S. 349, 363 (1978) (dismissing judicial immunity); and *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) (discussing prosecutorial immunity). In recognition of the severe effect of absolute immunity on § 1983 lawsuits, the Supreme Court has explained that the "presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed*, 500 U.S. 478, 487 (1991).

Although prosecutors receive the protection of absolute immunity, this immunity attaches only in suits for money damages. *See, e.g.*, *Pachtman*, 424 U.S. at 410; *Ex Parte Young*, 209 U.S. 123 (1908). To determine whether a particular individual is entitled to absolute prosecutorial immunity, courts consider the functions performed by the official, rather than his title. *Forrester v. White*, 484 U.S. 219, 229 (1988). An official will thus receive this immunity

when he performs prosecutorial, not investigative, acts. *Pachtman*, 424 U.S. at 410. Generally, prosecutorial functions are those that are "intimately associated with the judicial phase of the criminal process." *Id.* at 430. Thus, when a prosecutor is working "within the scope of his duties in initiating and pursuing a criminal prosecution," he remains within the ambit of absolute immunity. *Id.* at 410. For example, a prosecutor is entitled to absolute immunity for filing criminal charges, *Pachtman*, 424 U.S. at 409, and presenting evidence at a preliminary hearing, *Burns v. Reed*, 500 U.S. 478 (1991), but not for his active participation in an ongoing police investigation. *Burns*, 500 U.S. at 478. The prosecutor performs his advocative functions "under the watchful eye of the judge and in the shadow of the ever-present possibility of judge-imposed sanctions." *Dababnah v. Keller-Burnside*, 208 F.3d 467, 471 (4th Cir. 2000) (quoting *Marrero v. City of Hialeah*, 625 F.2d 499, 509 (5th Cir. 1980)). Attaching absolute immunity to these functions thus does not protect the prosecutor at the expense of individual rights and liberties. *Dababnah*, 208 F.3d at 471.

In this case, Defendant Michael's actions regarding the Plaintiffs were purely prosecutorial, and therefore deserving of absolute immunity. Mohammadi and Rowhani allege that Michael violated their constitutional rights by: (1) improperly obtaining an indictment against them; (2) orchestrating their arrest warrants and subsequent detention; and (3) prosecuting them for insurance-related theft. Such acts, however, are "intimately associated with the judicial phase of the criminal process." *Pachtman*, 424 U.S. at 430. Obtaining an indictment, for example, is an integral piece of the judicial process. As a prerequisite to a criminal trial, it asks an impartial grand jury to weigh the evidence offered by the prosecutor to determine whether sufficient evidence to charge the individual in

question exists. By presenting evidence before the grand jury, Michael was acting as an advocate for the State, and not as a witness. *See Kalina v. Fletcher*, 522 U.S. 118, 131 (1987) (explaining that a prosecutor is entitled only to qualified, rather than absolute, immunity when he acts as a witness). Michael's efforts to secure an arrest warrant on the basis of the indictment, and then to prosecute the Plaintiffs before a judge, are merely the next steps in any criminal prosecution.[11]

Moreover, Mohammadi and Rowhani specifically emphasize that Michael refused to participate in the Department of Labor's investigation. Compl. ¶¶ 6, 65, 84. McKee provided Michael with periodic updates, but at no point did he take an active role in the investigation. Rather, any interviews of witnesses by Michael occurred after Mohammadi and Rowhani were charged, as Michael was preparing for trial. Given the omission of any facts indicating that Michael participated in the investigation, his conduct remains purely prosecutorial. Michael is therefore entitled to absolute immunity, and Count II is DISMISSED WITH PREJUDICE.

## II. Defendants McKee, O'Brien, and Finizie's Motion to Dismiss (ECF No. 15)

As Mohammadi and Rowhani voluntarily dismissed Counts III-VII, only Count I remains against Defendants McKee, O'Brien, and Finizie ("the Federal Defendants"). Plaintiffs allege that the Federal Defendants targeted the Plaintiffs on the basis of their national origin, thereby depriving them of their right to equal protection under the

---

[11] In their Response in Opposition to Defendant Michael's Motion to Dismiss (ECF No. 9), Plaintiffs argue that Michael may be held liable for making false statements to the media in connection to Plaintiffs' arrest and prosecution. Plaintiffs do not, however, specify which statements were false. Instead, they merely state that such falsities occurred. Such conclusory, without more, do not pass muster under *Iqbal* and *Twombly*.

Constitution. Compl. ¶¶ 124-28. Plaintiffs also claim that the Federal Defendants violated the Plaintiffs' Fourth Amendment protection against unreasonable seizure, as the Federal Defendants' investigation led directly to Plaintiffs' allegedly unlawful arrests and incarceration. Like Defendant Michael, the Federal Defendants move to dismiss Count I pursuant to Rule 12(b)(6), contending that they are entitled to qualified immunity for any and all actions concerning the Mohammadi and Rowhani.[12]

Qualified immunity affords government officers protection from suits for monetary damages when the officers have acted in good faith. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This brand of immunity "is an affirmative defense that shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013) (internal quotation marks omitted); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a plaintiff sues federal officials for money damages under *Bivens*, 403 U.S. at 388, the "qualified immunity analysis is identical" to that of § 1983. *Wilson v. Lane*, 526 U.S. 603, 609 (1999). Qualified immunity is intended to apply to "gray areas, where the law is unsettled or murky," rather than situations where the government actors were "plainly incompetent or . . . knowingly violate[d] the law." *Occupy Columbia*, 738 F.3d at 118. Thus, the doctrine shields government officials performing discretionary functions from § 1983 and *Bivens* claims unless "(1) the allegations underlying the claim, if true, substantiate a

---

[12] As previously discussed, of the Federal Defendants' arguments in support of their Motion to Dismiss, only their Rule 12(b)(6) arguments remain relevant after Plaintiffs' voluntary dismissal of Counts III-VII.

violation of federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known." *Id.*

Mohammadi and Rowhani assert two alleged violations of their constitutional rights. First, they contend that the Federal Defendants chose to investigate Plaintiffs for insurance-related theft because Plaintiffs are of Iranian descent. This alleged discrimination on the basis of national origin, Plaintiffs claim, violated their right to equal protection under the Constitution. As a threshold matter, national origin discrimination is certainly a violation of a "clearly established right" under the Constitution. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (explaining that discrimination on the basis of race, alienage, or national origin clearly violates the Equal Protection Clause, unless the classification can survive strict scrutiny).

Yet, Mohammadi and Rowhani fail to allege sufficient plausible claims that the Federal Defendants targeted them because of their national origin. Plaintiffs argue that Defendant McKee, for example, targeted them because she believed that they, as persons of Iranian descent, "should be easy to prosecute with no evidence." Compl. ¶ 82. Mohammadi and Rowhani essentially contend that the investigation was a means through which the Federal Defendants could persecute Plaintiffs because of their national origin. Plaintiffs' allegations, however, consist solely of vague allegations with no specific details to support a finding of discrimination. Although this Court must take the facts in the light most favorable to Plaintiffs, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Wag More Dogs, LLC*, 680 F.3d at 365. Simply affixing the phrase "because Plaintiffs were of Iranian descent" to a

claim does not amount to the level of specificity required by *Twombly* and *Iqbal*. The allegations underlying Plaintiffs' claim, even if true, are thus not sufficient to substantiate a violation of their equal protection rights constitutional rights.

Plaintiffs' second alleged constitutional violation – that the Federal Defendants' actions subjected them to false arrest and false imprisonment, in violation of the Fourth Amendment – similarly fails under the pleading standard of *Iqbal* and *Twombly*. Successful constitutional tort claims "require a demonstration of both but-for and proximate causation." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). As with common law torts, the "subsequent acts of independent decision-makers (*e.g.*, prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure." *Id.* Although the presence of an independent decision-maker does not automatically sever this connection, an investigator like the Federal Defendants remains the cause of the unreasonable seizure when, for example, he "fail[s] to disclose exculpatory evidence to the prosecutor . . . or unduly pressure[s] the prosecutor to seek the indictment." *Id.* at 648.

In this case, Mohammadi and Rowhani were arrested and held on the basis of the findings in the Federal Defendants' investigation. A grand jury then indicted the Mohammadi and Rowhani for the crimes in question, thereby breaking the causal chain between the Federal Defendants' investigation and Plaintiffs' allegedly unreasonable seizures. Plaintiffs contend, however, that the Federal Defendants "knew that Plaintiffs were innocent of any crime," but continued to investigate them and seek their indictment and arrests. Resp. in Opp. to F. Defs.' Mot. to Dismiss, 20, ECF No. 19. Yet, Mohammadi and Rowhani do

not allege with any specificity how the Federal Defendants knew them to be innocent. Although knowingly withholding exculpatory evidence may mend a broken causal chain, Plaintiffs still must comply with the pleading standard of *Iqbal* and *Twombly*. As with their equal protection claim, Plaintiffs employ conclusory statements rather than actual facts to substantiate their claim.

Plaintiffs fail to provide any specific facts indicating that a constitutional violation occurred, or that the Federal Defendants were responsible for the alleged violations. Accordingly, Count I is DISMISSED WITHOUT PREJUDICE.

<u>CONCLUSION</u>

For the reasons stated above, Defendant Michael's Motion to Dismiss (ECF No. 8) is GRANTED WITH PREJUDICE and Defendants McKee, O'Brien, and Finizie's Motion to Dismiss (ECF No. 15) is GRANTED WITHOUT PREJUDICE.

A separate Order follows.


Dated: March 26, 2015                    /s/_____

                                                Richard D. Bennett
                                                United States District Judge